## UNITED STATES OF DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ENESTA JONES** ) | |
| **915 E Street, NW** ) | |
| **Washington, DC 20004,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No._____** |
| ) | |
| **MICHAEL S. REGAN, Administrator** ) | |
| **U.S. Environmental Protection Agency** ) | |
| **1200 Pennsylvania Avenue, NW** ) | |
| **Washington, DC 20460,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## COMPLAINT
(Discrimination based upon race, color, sex
and in retaliation for prior EEO Activity)

## INTRODUCTION.

1.      Plaintiff, Enesta Jones, brings this action against her employer, the United States

Environmental Protection Agency (EPA) pursuant to the Civil Rights Act of 1964, as amended,

42 U.S.C. § 2000e-16 (Title VII). Plaintiff states that she successfully served as a GS-1035-14,

Senior Public Affairs Specialist, in the EPA Office of Media Relations of the Office of Public

Affairs (OPA) from  2004 until 2021 she and received performance reviews that rated her as

either "Exceeds Expectations" or "Outstanding." She contends that because of her sex, race,

color, and protected EEO activity, Nancy Grantham, the Principal Deputy Associate

Administrator for the OPA and her immediate supervisor repeatedly subjected her to continuing

acts of harassment culminating with proposing that she be suspended from duty with pay for

seven days. Plaintiff further contends that by approving the suspension proposed, her second level supervisor, Deputy Chief of Staff for Management, Office of the Administrator Wesley Carpenter actively joined in discriminating and retaliating against Ms. Jones by, among other things, placing Ms. Jones on forced administrative leave and approving her seven day suspension.

## JURISDICTION

2.      This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, thereby presenting a federal question.

## VENUE

3.      Venue is proper in the United States District Court for the District of Columbia pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims of discrimination and retaliation occurred in this judicial district, which is where plaintiff worked for the defendant and where the defendant is located, has offices, conducts business, and is headquartered in this judicial district.

## Parties

4.      Plaintiff Enesta Jones, is a citizen of the United States and of the District of Columbia. At all times relevant to the claims made herein, plaintiff was employed by defendant and served as a GS-1035-14, Senior Public Affairs Specialist, in the Office of Media Relations of the Office of Public Affairs (OPA) at the Headquarters of the Environmental Protection Agency in Washington, DC.

5.      Defendant Michael S. Regan, is the Administrator of the U.S. Environmental Protection Agency, and as such the head of the  U.S. Environmental Protection Agency, which is a department within the Executive branch of the government of the United States that has had more than 500 employees in 20 or more calendar weeks during the past year.  As Secretary, he is responsible for the personnel actions, omissions and practices within the EPA, including those within OPA, and is here sued only in his official capacity as Administrator of the U.S. Environmental Protection Agency

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      All of the necessary administrative prerequisites for filing the instant civil action have been met.  Plaintiff initiated the EEO process when she contacted an EEO Counselor on August 30, 2021. Then, on November 19, 2021, she filed a formal complaint of discrimination alleging that she was subjected to hostile work environment harassment (nonsexual) and discriminated against based on race (Black), color (unspecified), sex (female) and retaliation for her prior EEO activity. The defendant thereupon accepted plaintiff's complaint and investigated the following issues:

a.      Since May 2021, management continually refused to respond to any of her inquiries or provide a written list that captures all office guidelines and policies;

b.      In June 2021, management placed erroneous information, depicted inaccurate duties and responsibilities in plaintiff's mid-year progress report, as well as accused plaintiff of insubordination when plaintiff refused to sign off on the same mid- year progress report;

c.      Since July 2021, plaintiff was singled out and directed by management to copy her

supervisor on all of her messages to the team, including all messages to all EPA political appointees;

d.   On July 1, 2021, management threatened plaintiff with a 7-day suspension without pay, and on July 29, 2021 wrongfully suspended Plaintiff for 7 days effective Monday, August 2, 2021;

e.   On or about July 19, 2021, plaintiff's supervisor announced, without explanation, that she would be eliminating plaintiff's back-up responsibilities;

f.   On or about July 21, 2021, plaintiff's supervisor, without explanation, listed her as the only single-team member on an organizational chart within Office of Public Affairs (OPA), Office of Media Relations, while listing all other colleagues with the same primary responsibilities under OPA's Immediate Office;

g.   On or about July 22, 2021, plaintiff's management sent her a threatening email wrongfully accusing plaintiff of sending email messages with disrespectful or blaming language;

h.   On or about July 25, 2021,  plaintiff's management denied her an FY2020 performance award;

i.   On or about August 25, 2021,  plaintiff's management directed her to complete two training courses and be counseled by management on importance of maintaining mutual respect in the workplace, based on the fact that plaintiff's supervisor caused plaintiff to be wrongfully accused and subjected to an investigation on allegations of workplace harassment of her coworkers;

j.   On October 18, 2021,  plaintiff's management directed her to get approval before

-4-

missing any office meetings for any reason; and

k.   Since November 22, 2021, management instructed plaintiff to request prior written approval to work outside of her normal duty hours while knowingly allowing other staff members to work outside their normal duty hours.

In addition, plaintiff alleged that the defendant retaliated against her because of her ongoing EEO activity when:

l.   On April 1, 2022, plaintiff was placed on forced administrative leave based on unspecified allegations of improper conduct; and,

m.   On April 20, 2022, plaintiff was forced to submit to an interview regarding unspecified allegations of improper conduct with an investigator and without the attendance of her attorney.

7.   On December 22, 2022, after the defendant completed its administrative investigation, plaintiff requested a hearing before an administrative judge of the EEOC. On June 27, 2024, the administrative judge granted the defendant's motion for summary judgment on all claims. On July 2, 2024, defendant concurred with the administrative judge's summary judgment decision and adopted that decision as a Final Order. This complaint is being timely filed with 90 days of the Defendant's Final Order.

## STATEMENT OF FACTS

8.   Plaintiff, Enesta Jones is an African American, black female.  Beginning in 2004, she has worked as a Senior Press Officer in the OPA. As a Senior Press Officer, Ms. Jones was regularly required to perform duties outside of her tour of duty, i.e., scheduled work hours, to satisfy the requirements of her position. Indeed, for 15 years it had been the regular practice in the OPA to work

when  necessary to get the job done. Indeed, before October 2020 Ms. Grantham had never told Ms.

Jones that she needed prior written approval to work outside her scheduled work hours.    9      .

Plaintiff's troubles began in approximately June 2018, when Nancy Grantham was appointed

as the Principal Deputy Associate Administrator for the OPA. In that capacity Ms. Grantham also

oversaw and managed the OPA's internship program. Ms. Grantham was well aware that, in order

to carry out her duties, Ms. Jones needed required work outside the hours of her tour of duty.

10.     However, on August 28, 2020, when Ms. Jones asked Ms. Grantham to compensate

her for additional hours that she had worked, Ms. Grantham issued her discipline, in part, for

working hours outside of her tour of duty despite the fact that Ms. Jones' white and male co-workers

routinely worked outside of their tour of duty, but were never subject to disciplinary action.

11.     Therefore, in September 2020, plaintiff filed a harassment complaint against Ms.

Grantham contending that she was being treated in a disparate manner when compared to her white

and male coworkers. Eventually her complaint was denied by Wesley Carpenter who had become

her second level supervisor in July 2021 and who supported Ms. Grantham by ignoring the fact she

had been and was continuing to harass Ms. Jones.

12.     In February 2021 Ms. Grantham told plaintiff she was not authorized to work outside

of her approved work schedule without approval in advance. However, plaintiff's white and male

coworkers routinely took a minute or two, a truly *de minimis* time, to return an email from a co-

worker. Based on her workplace experience in the office before February 2021, plaintiff reasonably

understood she could take a couple of minutes and respond to such matters on her day off. Indeed,

Ms. Grantham provided vague and ambiguous supervisory direction when she provided following

instruction on February 1, 2021: "when it came to my attention that you were working outside of

your duty hours without the appropriate approval, I emailed you and instructed you to stop working

outside of your duty hours."  This instruction pertained to an email exchange on February 1, 2021,

where Ms. Jones wrote two-lines-each responses to inquiries from two reporters.

  13. In  a follow-up email dated February 2, 2021, plaintiff asked for clarity, but Ms.

    Grantham did not respond. Some of the email's questions for clarity were:

-   "Can you please elaborate on how 'working' is explicitly defined?"

-   "Does that mean I cannot correspond with reporters at all before and after my work

    day has begun/concluded?"

-   "Does that mean I cannot correspond with my EPA colleagues at all before and after

    my work day has begun/concluded?"

-   "Does that mean I cannot correspond with my EPA colleagues about EPA issues on

    the weekends at all?

  14. Ms. Grantham refused to provide clarification. Instead, on July 29, 2021, Ms.

Grantham issued to plaintiff a notice of 7-day suspension without pay falsely alleging: (1) failure to

follow instructions; (2) conduct unbecoming of a federal employee; and (3) lack of candor. Ms.

Jones was thereafter suspended, effective August 2, 2021, for a 7-day period, despite that fact

plaintiff's managers had refused to answer questions about what actions would be considered to be

misconduct, and did not discuss the discipline with her and provide an explanation or details.

  15. In response to the proposed suspension plaintiff explained that she had engaged in

protected activity when she had expressed concerns about possible bias when she assisted two

minority students seeking internships in another department with the EPA after Ms.Grantham had

determined these students would not be recruited by the OPA. On April 26, 2021,  Ms. Grantham

asked plaintiff for information about the two students. Ms. Grantham indicated that her reason for requesting this information was to avoid overlapping with OPA's recruiting efforts,. Plaintiff responded by assuring Ms. Grantham the possible recruitment of the minority students prospects was "not duplicative or overlapping of any efforts that were or are already underway." Plaintiff was concerned about how Ms. Grantham intended to use the information because she did not want to jeopardize the minority students' ability to be hired as interns by the EPA. Even though Ms. Grantham refused to explain, plaintiff did, to the best of her ability, provide information requested by Ms. Grantham. While Ms. Grantham took offense because Plaintiff inquired about her reasons for wanting the information, Ms. Jones' inquiries were neither rude nor abusive. It is not unbecoming for a subordinate to ask "why?" Moreover, plaintiff never said that she did not have the identities of the two students. She said only that she did not "have information on two prospects." In this context of the email exchanges, there was no lack of candor. Based on privacy concerns, as Ms. Grantham specifically sought personal information about the two students, plaintiff sought to ensure that it was appropriate for her to provide the requested information before she responded. Ms. Jones therefore wrote: "Thanks, but please let me know your authorization to direct me." Ms. Grantham replied and plaintiff provided the information. Ms. Grantham later charged plaintiff with conduct unbecoming a Federal employee, alleging that her tone had been unprofessional and lack of candor. Plaintiff was therefore suspended for seeking clarification from her supervisor before releasing personal information about the minority students. Ms. Jones' inquiries were neither rude nor abusive. As such, it was not unbecoming for a subordinate to ask "why?" Moreover, there was no lack of candor because plaintiff did not tell Ms.Grantham that she did not have the identities of the two students. She said only that she did not have didn't "have information on two prospects."

16.     Mr. Grantham also falsely alleged that plaintiff failed to follow supervisory instructions regarding scheduling her FY2020 Performance Review Discussion. However, in June 2021, Ms. Grantham asked plaintiff to sign a mid-year progress report that contained inaccurate progress information which did not accurately reflect her duties.

- Plaintiff told Ms. Grantham that the mid-year report did not reflect her current duties but the duties she had performed ten years earlier.

- When plaintiff provided alternative language that correctly described her actual duties, her supervisor said the mid-year was a "living document," and could be updated later – but no such updates ever happened.

- Ms. Grantham thereupon characterized plaintiff's efforts to resolve the inaccurate information in her mid-year as "failure to follow instructions."

- Specifically, responding to the request that she schedule her mid-year review, plaintiff asked Ms. Grantham specific questions to which she did not receive a response until two (2) weeks later.

- In the meantime, plaintiff was waiting for Ms. Grantham to respond before she scheduled her mid-year review.

- When Ms. Grantham finally replied, plaintiff scheduled the meeting but Ms. Grantham did not attend due to an emergency and the meeting had to be rescheduled. The meeting was then rescheduled and Ms. Jones met with Ms. Grantham.

- While Ms. Grantham reprimanded plaintiff for failure to follow supervisory instructions to schedule her mid-year review meeting even though it was Ms. Grantham who delayed the meeting by refusing to update her mid-year to reflect

plaintiff actual duties and responsibilities, could have annotated her document with "employee refused to sign," which is a permissible common practice and therefore it was not misconduct for plaintiff to refuse to sign an inaccurate document.

• Plaintiff therefore had no reason to foresee that her efforts to resolve the inaccuracies would be treated as misconduct.

17.     Defendant also disciplined alleging that she *refused* to copy Ms. Grantham on communications with EPA political officials; refused to notify Ms. Grantham or obtain approval before missing meetings; and, refused to obtain prior supervisor approval before working outside of her duty hours. Defendant asserted that "[d]espite Ms. Grantham's clear instructions, plaintiff *refused* to comply with those instructions" because she failed to send to Ms. Grantham copies of her emails. On or about July 8, 2021, Ms. Grantham singled plaintiff out and directed her copy her on all messages to the OPA team. Prior to that date plaintiff had not been informed of this new requirement. While plaintiff disagreed with this new rule because it singled her out and treated her differently that her coworkers, rather than *refusing* to comply, plaintiff made it her practice to copy Ms. Grantham on emails. She never intentionally refused to do so.

18.     Defendant also reprimanded  plaintiff for refusing to notify or obtain approval from Ms. Grantham prior to missing meetings. However, the only meeting for which there is documentation is a meeting on July 22, 2021, when Ms. Jones had a personal emergency and therefore was a few minutes late signing in for the meeting.

19.     On July 19, 2021,  Press Officer Neshawne Gibson was scheduled to be absent for two weeks and plaintiff was designated the back-up Press Officer for Budget. As such, her responsibility would be to handle the duties of the Press Officer in Ms. Gibson's absence.  This was

an important opportunity for Ms. Jones as service as a back-up Press Officer enhanced her qualifications for possible future promotion. However, without providing any explanation, Ms. Grantham said that she would back up Ms. Gibson. While Ms. Grantham claims that all OMR staff members' back-up responsibilities, including plaintiff's were eliminated because the OPA management team implemented across the board process changes to the back-up responsibilities for the office, this explanation is not true as other members of OPA continued to serve as back-up. In a daily Staff Meeting, plaintiff asked Ms. Grantham why she was not being allowed to serve as the acting Press Officer. Ms. Grantham made no mention of an across the board change to back up responsibilities and provided no reason why she unexpectedly decided to replace Ms. Jones as Ms. Gibson's back-up. Plaintiff therefore contends that Ms. Grantham stripped plaintiff's back-up duties as an act of discrimination and/or retaliation.

20.     Despite the fact that based on her level of performance plaintiff  had routinely received a Cash Award in previous years, she did not receive as Cash Award for FY 2020. Plaintiff avers that based on her performance, which included work for the Administrator of the EPA, and based on the published criteria for Outstanding and Exceeds Expectations performance, she was due an award and that Ms. Grantham discriminated against her by depriving her of a Cash Award that all other members of OPA who performed at her level were given.

21.     In April 2021, Ms. Grantham discriminated and retaliated against plaintiff by instigating a fact-finding investigation against plaintiff based on false allegations of workplace harassment. First, Ms. Grantham told plaintiff's coworkers that plaintiff was trying to take over the Intern Program to which they were assigned. Then, when the coworkers complained about this rumor from Ms. Grantham, she initiated a workplace harassment against plaintiff. In fact, the statements

of the so-called complaining witnesses (Ms. Coviello and Mr. Daguillard) reflected only that they were concerned about Ms. Jones' involvement in the Intern Program. As such, the fact-finding investigation did not identify a single act by Ms. Jones that could reasonably be described as "workplace harassment." Indeed, the investigator found that workplace harassment "did not occur.*"*

22.    On April 1, 2022, Ms. Grantham discriminated and retaliated against plaintiff by causing her to be placed on adminstrative leave while the Workplace Harassment investigation was ongoing. However, there never any was a reason to ban Ms. Jones from the workplace for supposedly posing a physical threat to anyone she worked with. Rather, the allegations against plaintiff were a collection of conclusory statements not based on first hand knowledge or identifying a specific incident where Ms. Jones harassed anyone.

## STATEMENT OF CLAIMS

**Count:       Discrimination Based upon Race, Color and Sex and Prior Protected EEO Activity**

24.    As described in paragraphs 8-23, defendant violated 42 U.S.C § 2000e-16 (a) by denying plaintiff a performance-based Cash Award for 2020 and subjecting Plaintiff to a hostile work environment during period from August 20, 2020 through April 2022.

25.    As a result of this unlawful discrimination, plaintiff has suffered and continues to suffer adverse consequences, including loss of pay and benefits of such employment, career damage, personal and professional embarrassment and humiliation, both delayed healing and an exacerbation of her medical condition, physical and

-12-

emotional pain and suffering, and a loss of the enjoyment of life.

### REQUEST FOR RELIEF

WHEREFORE, plaintiff requests this Court enter judgment in her favor and against defendant on her claims of unlawful discrimination and retaliation, and provide her with the following relief:

(a)   award plaintiff compensatory damages against defendant in the amount of $300,000.00, plus interest thereon;

(b)   order defendant to rescind and remove from plaintiff's records and the records of the defendant all documents pertaining to July 1, 2021 proposal to suspend plaintiff from duty for 7 days and the July 29, 2021 decision upholding her suspension and thereupon award plaintiff full back pay and other benefits with interest thereon;

(c)   enjoin defendant from further discriminating or retaliating against plaintiff;

(d)   award plaintiff the costs of bringing and maintaining this civil action and the administrative charges that preceded it, including reasonable attorneys' fees; and

(e)   award plaintiff such other and further relief as the interests of justice may require.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues of fact, including the measure of damages.

  /s/ Richard L. Swick
Richard L. Swick
D.C. Bar No. 936930
SWICK & SHAPIRO, P.C.
1432 K Street, N.W.
12th Floor
Washington, DC 20005
Tel. 202-842-0300
Fax 202-842-1418
Email - rlswick@swickandshapiro.com

Attorney for Plaintiff