UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ENESTA JONES,

    Plaintiff,

    v.

LEE ZELDIN, Administrator,
Environmental Protection Agency,

    Defendant.

Civil Action No. 24-2681 (JEB)

**MEMORANDUM OPINION**

In this Title VII action, Plaintiff Enesta Jones alleges that her employer, the Environmental Protection Agency, discriminated and retaliated against her on the basis of race, color, sex, and protected Equal Employment Opportunity activity. More specifically, she claims that the EPA subjected her to a hostile work environment and denied her a performance-based cash award. In moving to dismiss, Defendant argues that Jones's Complaint is factually deficient and thus fails to state a claim upon which relief can be granted. As the Court agrees, it will grant the Motion.

**I.    Background**

    A.    Factual Background

The Court, as it must at this stage, draws the facts from the Complaint, presuming them to be true. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). Jones, who is Black, has served as a Senior Public Affairs Specialist in the EPA's Office of Public Affairs (OPA) since 2004. See ECF No. 1 (Compl.), ¶¶ 1, 8. For fourteen years, her career progressed without apparent incident. The workplace dynamic shifted, however, in June 2018,

1

when Nancy Grantham was appointed as the Principal Deputy Associate Administrator for OPA and became Jones's supervisor. Id., ¶ 9; ECF No. 8-1 (Mot.) at 1. According to Jones, Grantham's arrival marked the beginning of years of treatment that was first discriminatory and then retaliatory. The relationship between the two further soured in August 2020, when Jones requested compensation for duties performed outside of her scheduled work hours — a "regular practice in the OPA . . . when necessary to get the job done." Id., ¶¶ 8–10. Grantham "was well aware" that such work was necessary for Jones to fulfill her responsibilities. Id., ¶ 9. Rather than approve this request, Grantham disciplined Jones for working outside her tour of duty, despite the fact that, according to Jones, her "white and male co-workers routinely worked outside of their tour of duty but were never subject to disciplinary action." Id., ¶ 10.

Plaintiff responded by filing an internal harassment complaint against Grantham in September 2020, contending that she was being treated differently from her white and male colleagues. Id., ¶ 11. That complaint was not resolved until July 2021, when it was rejected by another of Jones's supervisors. Id. In the meantime, Jones and Grantham's relationship continued to deteriorate.

Following the first dispute over working outside of scheduled hours, Grantham required Plaintiff to obtain written pre-approval for any after-hours work while "knowingly allowing other staff members to work outside their normal duty hours," and she did not respond to Jones's requests for clarification of office policies. Id., ¶ 6(a), (k). Negative professional consequences followed: Grantham required Jones to copy her on all team communications, eliminated Jones's back-up responsibilities without explanation, and isolated her on an organizational chart as "the only single-team member" while grouping other OPA employees together. Id., ¶ 6(c), (e), (f). Reviews of Jones's performance further strained the relationship, as management authored a

mid-year progress report containing allegedly inaccurate information, and Jones was later denied a performance-based cash award for fiscal year 2020 seemingly as a result. Id., ¶¶ 6(b), 20.

The situation also escalated to formal discipline: Jones's supervisors imposed a seven-day suspension based on allegations that Plaintiff contends were false, initiated a workplace-harassment investigation into her conduct, required Jones to complete additional training courses and counseling on respect in the workplace, and ultimately placed her on forced administrative leave for "unspecified allegations of improper conduct." Id., ¶¶ 14, 21, 6(i), 6(l). All told, Jones alleges over a dozen instances of discriminatory or retaliatory treatment *en route* to her conclusion that she was subjected to a hostile work environment. Id., ¶ 24.

B.   Procedural Background

Plaintiff initiated the administrative process by contacting an EEO Counselor in August 2021, one month after her internal complaint was resolved unfavorably. Id., ¶ 6. She subsequently filed a formal complaint of discrimination in November of that year, alleging that she was subjected to harassment and discrimination based on race, color, sex, and in retaliation for prior EEO activity. Id. Jones requested a hearing before an administrative judge of the EEOC, who granted Defendant's motion for summary judgment on all claims in June 2024. Id., ¶ 7. A week later, the EPA adopted the administrative judge's decision as its final order. Id.

Plaintiff then filed this suit on September 19, 2024, alleging discrimination based on race, color, sex, and prior protected EEO activity. Id. at 12. Her single claim encompasses two allegations: first, a hostile work environment based on discrimination (race, color, and sex) as

well as retaliation for her protected EEO activity; and second, a discriminatory denial of her FY2020 performance-based cash award. Id., ¶ 24. The EPA now moves to dismiss.

## II. Legal Standard

Defendant asks this Court to dismiss Plaintiff's suit for failure "to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). See Mot. at 7. In evaluating this Motion, the court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

## III. Analysis

The Court begins with Jones's hostile-work-environment claim before turning to her separate claim of discriminatory denial of a cash award.

A.     Hostile Work Environment

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), or "because he has made a charge . . . or participated in any manner in an investigation" of employment discrimination. See id. § 2000e-3(a). These provisions forbid an employer from "requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). A hostile work environment is thus actionable under Title VII when it is the result of discrimination or retaliation. See, e.g., Harris v. Wackenhut Servs., Inc., 419 F. App'x 1, 1 (D.C. Cir. 2011) (discrimination); Singletary v. District of Columbia, 351 F.3d 519, 526 (D.C. Cir. 2003) (retaliation).

As described above, Jones claims that she was subjected to a hostile work environment based on her race, color, and sex, as well as in retaliation for her protected EEO activity. To prevail, she must allege conduct that both "clear[s] the high bar required to establish a hostile work environment," Gulakowski v. Barr, 2019 WL 4469241, at *4 (D.D.C. Sept. 18, 2019), and is causally connected to either her aforementioned characteristics or her protected activity. Her Complaint falls short on both fronts.

A hostile-work-environment plaintiff "must show that [her] employer subjected [her] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting Harris v. Forklift Sys., Inc., 510 U.S. at 21). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its

5

severity, its offensiveness, and whether it interferes with an employee's work performance." Id. (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998)). "The Supreme Court has made it clear that 'conduct must be extreme to amount to a change in the terms and conditions of employment.'" George v. Leavitt, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting Faragher, 524 U.S. at 788). By adhering to these standards, the Court thereby "ensure[s] that [employment-discrimination law] does not become a general civility code" that involves courts in policing "the ordinary tribulations of the workplace." Faragher, 524 U.S. at 788 (citations and quotation marks omitted).

    Jones does not satisfy this standard. Although she alleges that she experienced a series of unpleasant workplace occurrences, the incidents she describes do not rise to the level of severity or pervasiveness needed to state a hostile-environment claim. Most of the actions Plaintiff complains about are the sort of "work-related actions by supervisors" that "courts typically do not find . . . to be sufficient for a hostile work environment claim." Munro v. LaHood, 839 F. Supp. 2d 354, 366 (D.D.C. 2012) (quotation marks omitted). These include being required to copy her supervisor on emails, directed to obtain approval before missing meetings, accused of insubordination, depicted unfavorably on an organizational chart, denied certain work opportunities and responsibilities, and reprimanded and investigated for allegedly disrespectful and harassing conduct. See Compl., ¶ 6. Courts have consistently held that such workplace grievances — even when understandably frustrating for the employee — are not sufficiently severe to survive a motion to dismiss. See, e.g., Nurriddin v. Bolden, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (holding that "disparaging remarks, criticisms of [plaintiff's] work, and other negative comments do not sufficiently demonstrate a significant level of offensiveness" needed for hostile-environment claim); id. ("Nor can the removal of important assignments, lowered

performance evaluations, and close scrutiny of assignments by management be characterized as sufficiently intimidating or offensive in an ordinary workplace context."); René v. Granholm, 2022 WL 17820342, at *7 (D.D.C. Dec. 20, 2022) (rejecting hostile-environment claim where plaintiff alleged lack of favorable work opportunities, criticism by supervisors, and unfavorable performance reviews).

Jones's seven-day suspension and forced administrative leave, perhaps the most severe actions she alleges, do not push her Complaint across the finish line. Suspensions and administrative leave are insufficient to establish a hostile work environment. See Hockaday v. Washington Metro. Area Transit Auth., 2023 WL 3844388, at *6 (D.D.C. June 6, 2023) (holding that suspensions and forced leave constitute "[o]ccasional instances of less favorable treatment involving ordinary daily workplace decisions" and "are not sufficient to establish a hostile work environment") (quoting Bell v. Gonzalez, 398 F. Supp. 2d 78, 92 (D.D.C. 2005)), aff'd, 2024 WL 2229699 (D.C. Cir. May 17, 2024). The Court thus finds it highly unlikely that Jones's allegations rise to the level of a hostile work environment.

Even if the Court assumes *arguendo* that Plaintiff clears that bar, she is still out of luck. She has not alleged that any hostility occurred because of her race, color, sex, or prior EEO activity — a fatal defect in a Title VII claim. The Complaint contains entirely conclusory assertions that Grantham's actions were motivated by discriminatory or retaliatory animus, see Compl., ¶¶ 1, 6, 19–22, without offering any factual allegations in support of this inference. Instead, Jones characterizes her treatment as being "singled out," id., ¶¶ 6(c), 17, suggesting individualized targeting rather than discrimination based on a protected characteristic. Without a connection to any protected characteristic, any wrongs she suffered are not actionable under Title VII. Were it otherwise, "every employee who is disciplined, demoted, or fired for alleged

7

misconduct could sue for employment discrimination based on race, color, religion, sex, or national origin and — merely by denying the underlying allegation of misconduct — <u>automatically</u> obtain a jury trial." <u>Brady v. Off. of Sergeant at Arms</u>, 520 F.3d 490, 496 (D.C. Cir. 2008); <u>see also</u> <u>Dudley v. Washington Metro. Area Transit Auth.</u>, 924 F. Supp. 2d 141, 169 (D.D.C. 2013) ("There must be some connection between the wrong and the plaintiff's membership in a protected class or engagement in protected activity.").

Only once does Jones claim that her white and male coworkers received preferential treatment — in that they worked outside their tours of duty without disciplinary action. <u>See</u> Compl. at ¶¶ 10–12. This sole allegation of disparate treatment is not enough. Without alleging that any of the <u>remaining</u> suite of complained-of actions was motivated by discrimination, Plaintiff's allegation of discrimination with respect to working outside of scheduled hours stands alone. Such an isolated allegation cannot support a hostile-work-environment claim. <u>See</u> <u>Baird v. Gotbaum</u>, 662 F.3d 1246, 1252 (D.C. Cir. 2011) ("[A]cts giving rise to a hostile work environment claim must collectively meet the independent requirements of that claim . . . and must be adequately connected to each other . . . .") (citation omitted).

Finally, the timing of events undermines any inference of retaliatory motive. Jones began engaging in protected EEO activity in August 2021 — more than three years after her "troubles began" with Grantham's arrival in June 2018. <u>See</u> Compl., ¶¶ 6, 9. Indeed, most of the conduct that Plaintiff alleges constituted a hostile work environment occurred <u>prior</u> to her initiation of the EEO process. <u>Id.</u>, ¶ 6(a)–(i). Jones also does not allege anywhere in her Complaint that any of the offending conduct that occurred <u>after</u> she initiated the EEO process was motivated by retaliation — or even that her supervisors had any knowledge of her protected activity.

Jones attempts to resuscitate her defective retaliation claim in her Opposition by implying

8

that the actions taken by her supervisors after August 2021 were retaliatory.  See ECF No. 10 (Opp.) at 14.  She asserts there is "no question" that her supervisors were aware of her EEO activity by that time.  Id.  Even if this were factually supported, which it is not, see Wilkerson v. Mayorkas, 2024 WL 1674638, at *2 (D.D.C. Apr. 18, 2024) (dismissing retaliation claim where plaintiff failed to allege "whether [the retaliator] was aware of any protected communication" by an employee), a plaintiff cannot amend her Complaint by including new factual allegations in an Opposition.  See Winmar Constr., Inc. v. Iron Kingdom, Inc., 2024 WL 3338922, at *4 (D.D.C. July 9, 2024).  Jones's attempt to establish retaliation thus does too little and comes too late.

In sum, Jones has neither plausibly alleged conduct severe or pervasive enough to create a hostile work environment nor offered facts suggesting that any such environment was created because of a protected characteristic or activity.  The Court will thus dismiss this prong of the claim.

   B.  Discriminatory Denial of Cash Award

Jones also alleges that she was discriminatorily denied a cash award for FY2020 despite her strong performance.  See Compl., ¶¶ 20, 24.  This claim cannot proceed for two reasons.

First, Jones has effectively abandoned it.  Defendant highlighted several flaws with the claim as pled in the Complaint, including the conclusory nature of the allegations and the fact that the denial of the cash award occurred prior to Jones's protected activity.  See Mot. at 21–22.  Apparently seeing the writing on the wall, Plaintiff did not respond to any of these points in her Opposition.  When a plaintiff fails to respond to arguments raised in a motion to dismiss, courts may treat those arguments as conceded.  See, e.g., Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003); Ass'n of Am. Physicians & Surgeons v. Sebelius, 746 F.3d 468, 471 (D.C. Cir. 2014).

Second, even if the Court were to consider this claim on its merits, it suffers from the same fatal flaws as Jones's hostile-work-environment allegations. The Complaint's own timeline prevents her from characterizing the denial as retaliation, as Jones alleges that the cash award was denied on July 25, 2021 — more than a month before she initiated contact with an EEO Counselor. See Compl., ¶ 6(h). Nor has Plaintiff alleged any facts suggesting a causal connection to her protected characteristics. Her assertion that other OPA employees "who performed at her level" were given awards, id., ¶ 20, lacks any details about these comparators' race or sex that might begin to support an inference of discrimination. Of course, even then, Jones would still need to show that she was treated differently because of some protected characteristic. Simply being treated differently, without more, does not establish discrimination or retaliation. Without the requisite supporting facts, her claim amounts to a mere "formulaic recitation of the elements" of discrimination. See Twombly, 550 U.S. at 545. That is not enough to survive a motion to dismiss.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: March 19, 2025